## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEMPUR SEALY INTERNATIONAL, INC., TEMPUR-PEDIC MANAGEMENT, INC., TEMPUR-PEDIC NORTH AMERICA, LLC, TEMPUR WORLD, LLC, DAN-FOAM APS, and SEALY TECHNOLOGY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MIKEY MATTRESS INC. d/b/a MATTRESS FOR LESS and d/b/a MIKEY MATTRESS, and MICHAEL AZZARITI, Individually <br><br><br> Defendants. | Civil Action No. _____ <br><br> JURY DEMANDED |

## COMPLAINT

Plaintiffs Tempur Sealy International Inc., Tempur-Pedic Management, Inc., Tempur-Pedic North America, LLC, Tempur World, LLC, Dan Foam ApS, and Sealy Technology LLC (collectively "Tempur Sealy") bring this Complaint against Defendants Mikey Mattress Inc. d/b/a Mattress for Less and d/b/a Mikey Mattress ("Mikey Mattress") and Michael Azzariti ("Azzariti"), individually, and respectfully state as follows:

## INTRODUCTION

1.     Mikey Mattress has undertaken a deceptive and systematic effort to improperly trade on Tempur Sealy's trademarks. Mikey Mattress's efforts include somehow securing a used mattress that had been returned to Tempur Sealy for recycling or donation and selling it as a new mattress, and separately passing off another mattress of unknown origin as a Tempur Sealy branded STEARNS & FOSTER MATTRESS. While these two sales are incredibly damaging to

- 1-

Tempur Sealy, its brands, and to consumer trust in the bedding industry, the true extent of Mikey Mattress's improper conduct is still unknown. Based upon the fact that Mikey Mattress has attempted to pass itself off as a Tempur Sealy authorized reseller numerous times over the years—it has no affiliation and has never had any authorization to sell Tempur Sealy products—Tempur Sealy is rightfully concerned that Mikey Mattress has and continues to damage its reputation in New York and throughout the United States. Tempur Sealy asks that this Court permanently enjoin Mikey Mattress from its efforts to illegally trade on Temur Sealy's brands.

## THE PARTIES

2.      Plaintiff Tempur Sealy International, Inc. is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

3.      Plaintiff Tempur-Pedic Management, Inc. is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

4.      Plaintiff Tempur-Pedic North America, LLC is a Delaware limited liability company having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

5.      Plaintiff Tempur World, LLC is a Delaware limited liability company having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

6.      Plaintiff Dan-Foam ApS is a Danish corporation having its principal place of business at Holmelund 43, Aarup DK-5560, Denmark.

7.      Plaintiff Sealy Technology LLC is a North Carolina limited liability company having its principal place of business at One Office Parkway, Trinity, North Carolina 27370.

8.      Defendant Mikey Mattress Inc., d/b/a Mattress for Less and Mikey Mattress, is a New York domestic business corporation, located in Nassau County, West Hempstead, New

York.  Upon information and belief, Defendant's principal place of business is located at 86 Hempstead Turnpike, West Hempstead, New York 11552.  In addition to its brick-and-mortar location in West Hempstead, New York, Defendant maintains a brick-and-mortar showroom at 3221 NW Federal Highway, Jensen Beach, Florida. Defendant also operates a nationwide website and an Amazon.com storefront that advertises and sells infringing products to consumers nationwide.

9.     Upon information and belief, Defendant Michael Azzariti is an individual residing in the State of New York.

10.    Upon information and belief, Defendant Azzariti manages, owns, operates, supervises, and/or controls the day-to-day operations of Defendant Mikey Mattress, including the unlawful activities engaged in by Mikey Mattress, and has a direct financial interest in such unlawful activities. On information and belief, Defendant Azzariti had knowledge of, directed, controlled, supervised, acted in concert with, and/or took action that contributed to the unlawful activities engaged in by Defendant Mikey Mattress.

11.    Upon information and belief, Defendants Mikey Mattress and Azzariti are engaged in the business of selling mattresses and other ancillary products throughout the United States, including in this jurisdiction.

**JURISDICTION AND VENUE**

12.    This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), false advertising in violation of Section 43 of the Lanham Act, 15

- 3-

U.S.C. § 1125(a), trademark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. §

1125(c), and deceptive trade practices under N.Y. Gen. Bus. Law § 349.

13.     This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28

U.S.C. § 1331, and 28 U.S.C. § 1338.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to Tempur Sealy's claims in this matter

occurred in the Eastern District of New York, and certain of the Defendants are located in the

Eastern District of New York.

## STATEMENT OF RELEVANT FACTS

I.     **THE TEMPUR-PEDIC BRAND IS KNOWN WORLDWIDE AS A SOURCE OF HIGH-QUALITY BEDDING PRODUCTS.**

15.     Tempur Sealy is involved in the research, development, manufacture, supply, and

sale of premium mattresses, pillows, and other comfort products ("Tempur Sealy Products").

16.     Tempur Sealy advertises its high-quality Tempur Sealy Products nationwide,

including on television and on the Internet, under the TEMPUR-PEDIC, TEMPUR, TEMPUR-

PEDIC & Reclining Figure Design, SEALY, SEALY Butterfly & Design and STEARNS &

FOSTER marks, among others.

17.     Many Tempur Sealy Products include a type of viscoelastic, temperature

sensitive, and pressure relieving foam, the formula for which is proprietary to Tempur Sealy and

a valuable, highly confidential trade secret.

18.     Dan-Foam ApS owns a number of trademarks including TEMPUR, TEMPUR-

PEDIC, TEMPUR-HD, TEMPUR-ES, TEMPUR-PEDIC & Reclining Figure Design,

TEMPUR-LUXEADAPT, TEMPUR-ADAPT, TEMPUR-PROADAPT, among others, and has

registered such marks in the United States Patent and Trademark Office ("USPTO") as follows:

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| TEMPUR | 1,926,469 | Oct. 10, 1995 | Mattresses, Cushions and Furniture Pads Made of Viscous Foam |
| TEMPUR-PEDIC | 1,853,088 | Sept. 6, 1994 | Mattresses, Cushions and Furniture Pads Made of Viscous Foam |
| TEMPUR-HD | 3,451,045 | June 17, 2008 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads. |
| TEMPUR-ES | 3,955,437 | May 3, 2011 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads. |
| TEMPUR-PEDIC & Design  | 3,900,919 | Jan. 4, 2011 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters, and Chair Pads |
| TEMPUR-PEDIC | 4,581,571 | Aug. 5, 2014 | Therapeutic pet beds; ear plugs for noise reduction; Mattresses, seat cushions, pillows, bed frames; mattress toppers; chair pads; sofas; sleeper sofas; furniture, namely, home furniture; bed headboards; bed footboards; foot rests; furniture, namely, coffee tables and end tables; Retail store services featuring beds, mattresses, pillows, comforters, bed sheets, bed blankets, candles, fragrances, pajamas, stuffed toy animals and pet beds |
| TEMPUR-PEDIC & Design  | 5,606,338 | Nov. 13, 2018 | Mattresses, seat cushion, pillows, bed frames; mattress toppers; chair pads; sofas; sleeper sofas; furniture, namely, home furniture; bed headboards; bed footboards; foot rests. |

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| TEMPUR-LUXEADAPT | 5,704,405 | March 19, 2019 | Mattresses; seat cushions; pillows; bed frames; mattress toppers; seating cushions; sofas; sleeper sofas |
| TEMPUR-ADAPT | 5,547,552 | Aug. 21, 2018 | Mattresses; seat cushions; pillows; bed frames; mattress toppers; seating cushions; sofas; sleeper sofas. |
| TEMPUR- PROADAPT | 5,547,547 | Aug. 21, 2018 | Mattresses; seat cushions; pillows; bed frames; mattress toppers; seating cushions; sofas; sleeper sofas. |
| TEMPUR-PEDIC & Design   | 5,665,207 | Jan. 29, 2019 | Mattresses, seat cushion, pillows, bed frames; mattress toppers; chair pads; sofas; sleeper sofas; furniture, namely, home furniture; bed headboards; bed footboards; foot rests; Bed linen; bed sheets, fitted bed sheets, flat bed sheets, crib sheets; comforters; mattress pads; Retail store services featuring beds, mattresses, pillows, comforters, bed sheets, bed blankets, candles, fragrances, pajamas, stuffed animals and pet beds |

19.    Tempur Sealy, including through its related company Dan-Foam ApS, also owns registrations for the TEMPUR and/or TEMPUR-PEDIC trademarks in approximately 180 countries throughout the world.

20.    Sealy Technology LLC owns the trademarks SEALY, SEALY POSTUREPEDIC, STEARNS & FOSTER, and many others, and has registered such marks in the USTPO including as follows:

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| SEALY & Design  | 6,638,711 | Feb. 8, 2022 | Household linens; bed linens; mattress covers; pillow covers; bed sheets; bed spreads; comforters; bed blankets and blanket throws; mattress protectors in the nature of mattress pads |
| SEALY | 6,638,706 | Feb. 8, 2022 | Household linens; bed linens; mattress covers; pillow covers; bed sheets; bed spreads; comforters; bed blankets and blanket throws; mattress protectors in the nature of mattress pads |
| SEALY | 1,733,089 | Nov. 17, 1992 | Mattresses, box springs, sofas, convertible sofas [and waterbeds] |
| SEALY | 2,271,114 | Aug. 17, 1999 | Pillows; Comforters, feather beds, and mattress pads |
| SEALY | 4,481,852 | Feb. 11, 2014 | Beds for household pets |
| SEALY | 2,953,348 | May 17, 2005 | Furniture, namely, chairs |
| SEALY POSTUREPEDIC HYBRID | 4,688,812 | Feb. 17, 2015 | Mattresses, pillows, mattress foundations, adjustable bed bases |
| SEALY & Design  | 1,189,347 | Feb. 9, 1982 | Mattresses and box springs, convertible sofas and chairs, stationary sofas and chairs, and adjustable beds |
| SEALY & Design  | 677,335 | April 21, 1959 | Mattresses, box springs, and dual-purpose sleeping equipment |

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| S&F FOUNDED 1846 & Design <br><br>![S&F FOUNDED 1846 logo] | 1,329,627 | April 9, 1985 | Mattresses and box springs |
| STEARNS & FOSTER | 981,071 | March 26, 1974 | Mattresses |
| STEARS & FOSTER | 3,149,345 | Sept. 26, 2006 | Pillows;<br>Beddings, namely, sheets, pillow cases and component parts of such products |
| EST 1846 & Design <br><br>![EST 1846 fleur-de-lis logo] | 5,841,117 | Aug. 20, 2019 | Mattresses; pillows; mattress foundations; adjustable bed foundations; mattress toppers |

Sealy Technology LLC also owns registrations for SEALY, SEALY POSTUREPEDIC, and/or STEARNS & FOSTER in many countries throughout the world.

21.     Each registration is currently valid, subsisting and in full force and effect, and is registered on the Principal Trademark Register of the USPTO. True and accurate records from the USPTO's TDR database reflecting the Plaintiffs' Certificates of Registration referenced above are attached as **Exhibit A**.

22.     Hereinafter, all of the foregoing names and other marks owned, used, or registered by Tempur Sealy shall be referred to individually and collectively as the "TEMPUR SEALY Marks."

23.     The TEMPUR SEALY Marks and variants thereof have been extensively and continually used, advertised, and promoted by Tempur Sealy within the United States and worldwide for the past twenty years. Substantial time, effort, and money have been expended over the years in ensuring that the purchasing public associates such marks exclusively with Tempur Sealy. Tempur Sealy expends millions of dollars each year in connection with its advertisement and promotion of products bearing the TEMPUR SEALY Marks to establish these marks in the minds of customers as synonymous with a source of high-quality bedding products.

24.     As a result of Tempur Sealy's dedication to quality and its extensive marketing, the goodwill associated with the TEMPUR SEALY Marks has translated into hundreds of millions of dollars in sales annually.

25.     Because of Tempur Sealy's extensive advertisement and promotion of products bearing the TEMPUR SEALY Marks and its hundreds of millions of dollars in sales of Tempur Sealy Products, the TEMPUR SEALY Marks have become famous among the relevant consuming public.

II.     **TO PROTECT AND ENSURE THE QUALITY OF ALL TEMPUR SEALY PRODUCTS, AUTHORIZED RETAIL DEALERS ARE THE ONLY ENTITIES ALLOWED TO PROMOTE AND SELL TEMPUR SEALY PRODUCTS.**

26.     Tempur Sealy currently sells a variety of mattress models, all of which are associated with various TEMPUR SEALY Marks, and which are comprised of variously layered high-quality and proprietary materials. Tempur Sealy also sells foundations for its mattresses, as

well as other products made from its proprietary TEMPUR Material and other high-quality proprietary materials.

27.    To guarantee and maintain the high quality of goods bearing TEMPUR SEALY Marks, Tempur Sealy maintains an authorized network of retail dealers ("authorized retailers") for its Tempur Sealy Products. This network includes Tempur Sealy itself, physicians and other health care professionals, local bedding retailers, and select national retailers, all of which have been evaluated, trained, and authorized by Tempur Sealy to sell authorized Tempur Sealy Products.

28.    Authorized Tempur Sealy Products are sold only through these authorized channels to ensure that Tempur Sealy's legitimate, substantial, and non-pretextual quality control procedures are followed. Tempur Sealy provides a limited warranty to customers who purchase authorized TEMPUR-PEDIC Mattresses sold by authorized retailers.

29.    TEMPUR Material is sensitive to heat and cold and can be permanently damaged if not handled properly. Tempur Sealy takes steps to ensure that each TEMPUR-PEDIC authorized retailer understands and complies with the quality control measures necessary to protect and maintain the TEMPUR Material and to handle and store all of the Tempur Sealy Products properly.

30.    Tempur Sealy trains authorized retailers in the proper sale, promotion, storage, delivery, handling, care, and maintenance of Tempur Sealy Products, and retailers are required to educate customers on these topics and on the individual composition and performance characteristics of various Tempur Sealy Products.

31.    Tempur Sealy's Territory Sales Managers visit authorized retailers' stores after initial training to ensure that retailers in each sales territory incorporate the Tempur Sealy

training, including storing and handling the products properly and providing accurate information to customers about the products.

32.     Authorized retailers agree to comply with the obligations and advertising policies set forth in a retailer agreement. These retailer agreements, among other things, restrict the authorized retailer's ability to sell Tempur Sealy Products. For example, authorized retailers may sell products to ultimate consumers only. Tempur Sealy expressly prohibits the sale of Tempur Sealy Products to any party other than a retail customer.

33.     Tempur Sealy controls the geographic scope in which its authorized retailers may sell products as well. With the exception of a group of select and approved national retailers, authorized retailers may not routinely sell or ship Tempur Sealy Products outside of their physical store's defined geographic area, nor may they advertise the ability to ship Tempur Sealy Products nationwide.

34.     Tempur Sealy also prohibits authorized retailers from selling Tempur Sealy Products over the Internet without approval. If an authorized retailer wishes to sell Tempur Sealy Products over the Internet, it must obtain advanced approval from Tempur Sealy.  Such approval is subject to additional conditions and obligations in order to ensure a high-quality customer experience.

35.     Tempur Sealy offers "White Glove Delivery" service in connection with certain Tempur Sealy Products. This means that products are delivered to a consumer's home, set up inside the consumer's home, and the packaging materials are removed from the home, as are the old mattress and box spring that the TEMPUR-PEDIC Product has been purchased to replace.

36.     Tempur Sealy provides every authorized retailer with access to the proprietary Tempur Sealy Asset Manager Website. This website reminds the authorized retailers of the obligations and advertising policies set forth in the retailer agreement.

37.     Because of these quality control measures, customers enjoy unique, comprehensive warranty protection for all authorized Tempur Sealy Products sold directly by Tempur Sealy or through an authorized retailer.

38.     Tempur Sealy specifically warrants all authorized Tempur Sealy Products. The limited product warranty may be void if, for example, inappropriate foundations or box springs are substituted for the firm, completely flat, non-spring foundation that TEMPUR-PEDIC Mattresses require, or if the mattress, foundation, or cover has been physically damaged, burned, cut, or torn.

39.     Few other mattress and home product manufacturers provide equivalent warranty protection for their products. By providing robust warranty provisions, Tempur Sealy is communicating to consumers that its products are of extremely high quality. Tempur Sealy's reputation and long history as a company that fulfills its warranty obligations enhances the TEMPUR SEALY brands and the reputation for quality that they enjoy.

40.     Because TEMPUR Material can be permanently damaged if not handled correctly, Tempur Sealy does not warrant Tempur Sealy Products sold outside the authorized network ("Non-Authorized Products"), where chain of control and proper handling procedures cannot be verified by Tempur Sealy. STEARNS & FOSTER products also carry a limited warranty that cannot be transferred to subsequent owners. For this reason, products that are resold outside of the authorized network are also considered Non-Authorized Products.

III.    **DEFENDANTS HAVE A HISTORY OF USING TEMPUR SEALY MARKS IN AN UNAUTHORIZED MANNER TO SELL NON-AUTHORIZED PRODUCTS**

41.    None of the Defendants are authorized by Tempur Sealy as a retail seller of Tempur Sealy Products.

42.    Beginning at least as early as October 2019 and continuing to the present, Defendants have engaged in a pattern of conduct comprising the unauthorized sales of product through an Amazon storefront, through a brick-and-mortar retail store located in Hempstead, New York, and through a dedicated web site maintained at URL www.mikeymattress.com that includes the misuse of TEMPUR SEALY Marks to sell unauthorized and potentially counterfeit products.

43.    Over the last five years, Tempur Sealy has repeatedly notified Defendants of its unlawful conduct, but they have continued to evade enforcement by shifting locations and distribution channels.

44.    As early as November 2019, Tempur Sealy identified Defendants as the operators of the Amazon.com storefront "Mattress for Less," offering unauthorized and illegal sales of Tempur Sealy Products and using the TEMPUR SEALY Marks and certain copyrighted images in connection with the Amazon.com storefront. Internet screen shots on February 8, 2021 from the Amazon.com storefront "Mattress for Less" appear below, showing Defendants' use of the TEMPUR, TEMPUR-PEDIC, TEMPUR-ADAPT, STEARNS & FOSTER and SEALY POSTUREPEDIC HYBRID Marks in their Amazon.com listings. (Certificates of Registration of TEMPUR, TEMPUR-PEDIC, TEMPUR-ADAPT, STEARNS & FOSTER, SEALY, and POSTUREPEDIC HYBRID, **Exhibit A**, pg. 1, 19, 64, 79, 100, 106, 120, 133, 141, 151, 203, 216.)



45.     As of March 2024, Defendants continue to operate the Amazon storefront "Mattress for Less," offering unauthorized and illegal sales of Tempur Sealy Products and using the TEMPUR SEALY Marks and certain copyrighted images in connection with the Amazon.com storefront. Internet screen shots on March 26, 2024 from the Amazon.com

storefront "Mattress for Less" appear below, showing Defendants' use of the STEARNS & FOSTER and EST 1846 & Design Marks. (Certificates of Registration of STEARNS & FOSTER and EST 1846 & Design, **Exhibit A**, pg. 203, 216, 226.)



46.    The Mattress for Less storefront on Amazon.com displays the Business Name "Mikey Mattress" and the Hempstead, New York address associated with Mikey's Mattress New York brick-and-mortar location and is displayed below.



47.    As early as 2019, Defendants also used the TEMPUR SEALY Marks to advertise and promote their products at the West Hempstead, New York, a brick-and-mortar retail location. More specifically, TEMPUR SEALY Marks, including the TEMPUR-PEDIC & Design Mark, the SEALY & Design Mark, the STEARNS & FOSTER Mark, and the S&F FOUNDED 1846 & Design Mark have been displayed in the exterior windows of the Mikey Mattress store and on the interior walls. Copies of photographs of the Mikey Mattress retail location from October 2019 appear below. (Certificates of Registration of TEMPUR-PEDIC & Design, SEALY & Design, STEARNS & FOSTER, and S&F FOUNDED 1846 & Design, **Exhibit A**, pg. 89, 94, 159, 173, 189, 203, 216.)





48.    As early as 2019, Defendants used the TEMPUR SEALY Marks and images to advertise and promote its products on its commercial website, located at https://www.mikeymattress.com (the "Mikey Mattress Website"). Screen shots from the Mikey Mattress Website showing the improper use of the Tempur Sealy Marks in 2019 appear below, showing Defendants' use of the TEMPUR-PEDIC & Design Mark, the SEALY & Design Mark, the STEARNS & FOSTER Design Mark, and the S&F FOUNDED 1846 & Design Mark. (*Id.*)





49.     In addition, the Mikey Mattress Website represents that "[A]ll our inventory is new, direct from factory to you." A screen shot of this statement as it appeared on the Mikey Mattress Website in November 2019 also appears below, showing Defendants' use of the SEALY POSTUREPEDIC HYBRID Mark. (Certificate of Registration of SEALY POSTUREPEDIC HYBRID, **Exhibit A**, pg. 151.)



50.     Tempur Sealy has contacted Defendants numerous times regarding their objectionable conduct. Beginning in November 2019, and including May 2020, February 2021, August 2022, September 2022 and October 2022, the undersigned counsel for Tempur Sealy contacted Defendants in writing, placing them on notice of Tempur Sealy's objections and demanding that Defendants cease making false and misleading representations regarding the sale of Non-Authorized Products, and demanding that Defendants remove all commercial indicia indicating to consumers that Defendants are affiliated with or approved by Tempur Sealy, when

they are not. Copies of correspondence dated November 18, 2019, May 18, 2020, February 9, 2021, September 14, 2022, and October 3, 2022, from the undersigned counsel to Defendants are attached as collective **Exhibit B**.

51.    On May 18, 2020, Tempur Sealy demanded that Defendants immediately remove from their website and advertising all TEMPUR SEALY Marks, including TEMPUR-PEDIC, TEMPUR, SEALY, and STEARNS & FOSTER Marks. (Correspondence from Tempur to Defendants, **Exhibit B**, pg. 3; Certificates of Registration of TEMPUR-PEDIC, TEMPUR, SEALY, and STEARNS & FOSTER, **Exhibit A**, pg. 1, 19, 64, 100, 106, 120, 133, 141, 203, 216.)

52.    On February 9, 2021, Tempur Sealy demanded that Defendants remove from the Amazon.com storefront, "Mattress for Less," all TEMPUR SEALY Marks, including TEMPUR-PEDIC, TEMPUR, SEALY, and STEARNS & FOSTER Marks. (Correspondence from Tempur to Defendants, **Exhibit B**, pg. 5; Certificates of Registration of TEMPUR-PEDIC, TEMPUR, SEALY, and STEARNS & FOSTER, **Exhibit A**, pg. 1, 19, 64, 100, 106, 120, 133, 141, 203, 216.)

53.    On September 14, 2022, Tempur Sealy notified Defendants that it was aware of Defendants' continued use of TEMPUR SEALY Marks and provided a screenshot of the TEMPUR-PEDIC Mark on a listing under the Mattress for Less Amazon.com storefront. (Correspondence from Tempur to Defendants, **Exhibit B**, pg. 7.) Tempur reiterated its demand that Defendants remove all TEMPUR SEALY Marks and unauthorized images from the Mattress for Less Amazon.com storefront and any other advertising. (*Id.*, pg. 10.)

54.    On October 3, 2022, Tempur Sealy provided another screenshot of a listing under the Mattress for Less Amazon.com storefront showing Defendants' use of the TEMPUR-PEDIC

and TEMPUR-PROADAPT Marks. (*Id.*, pg. 13; Certificates of Registration of TEMPUR-PEDIC and TEMPUR-PROADAPT, **Exhibit A**, pg. 19, 64, 84.) This time, Tempur demanded that Defendants remove all TEMPUR SEALY Marks and unauthorized images from the Mattress for Less Amazon.com storefront and any other advertising where such marks and images were being used to sell products that are not new and/or not covered by the Tempur Sealy warranty, absent reasonably conspicuous disclosure of these facts to consumers. (Correspondence from Tempur to Defendants, **Exhibit B**, pg. 14.)

55.    All of the Defendants' express and implied associations with Tempur Sealy and its brands are false and misleading and Tempur Sealy has never sold product directly to any of the Defendants.

## IV.    DEFENDANTS ARE SELLING USED AND COUNTERFEIT TEMPUR SEALY MATTRESSES AS NEW AUTHORIZED PRODUCTS

56.    After years of attempting to stop Defendants from misusing Tempur Sealy Marks and creating false associations, in November 2023, Tempur Sealy conducted a secret buying operation to understand the severity of damage Defendants were inflicting upon Tempur Sealy and its brands.

57.    That investigation of Defendants included a visit to the Mikey's Mattress retail location at 86 Hempstead Turnpike, West Hempstead, New York 11552, using a third-party commercial investigation company, Marksmen, to supervise the investigation. During a visit conducted in December 2023, a Mikey's Mattress salesperson represented to the investigator that Mikey's Mattress was offering for sale TEMPUR-PEDIC, SEALY, and STEARNS & FOSTER mattresses and brands of these products were visible to the investigator on site including official head covers and foot covers used by authorized retailers in their showrooms. (Affidavit of Investigator Alex Maynfeld, **Exhibit C**, ¶ 4; Certificates of Registration of TEMPUR-PEDIC,

SEALY, STEARNS & FOSTER, Exhibit A, pg. 19, 64, 100, 106, 120, 133, 141, 203, 216.) The Mikey's Mattress salesperson also represented during the same visit that the Tempur Sealy products it offered for sale were new and unused. (Affidavit of Investigator Alex Maynfeld, **Exhibit C**, ¶ 5.) The salesperson also represented during the same visit that if the Investigator had any problem with the products, he should return them to the store. (*Id.*)

58.     On December 29, 2023, the investigator purchased a STEARNS & FOSTER Hurston Cushion Firm Full Size mattress from Defendants' retail store. (*Id.*, ¶ 6; Certificate of Registration of STEARNS & FOSTER, **Exhibit A**, pg. 203, 216.) The receipt that was provided to the investigator in connection with the sale stated: "ALL SALES ARE FINAL NO RETURNS." (*Id.*) The STEARNS & FOSTER mattress purchased from Mikey's Mattress during the investigation did not include "law tags" or "fire tags" that are required by applicable laws and regulations governing the sale of bedding. (Affidavit of Elise D. Bray, **Exhibit D**, ¶ 4.) These tags ensure the mattress is safe and is not a fire hazard. After documenting his findings in a written Investigative Report dated January 3, 2024, the Investigator delivered the Stearns & Foster Hurston Cushion Firm Full-Size mattress to a Tempur Sealy store in Carle Place, New York where he executed documentation reflecting the chain of custody for the product. (Affidavit of Investigator Alex Maynfeld, **Exhibit C**, ¶ 8.)

59.     Upon inspection by the Vice President of New Product Development at Tempur Sealy and based on information and belief, the STEARNS & FOSTER product sold by Defendants is not a mattress that is sold by Tempur Sealy under the STEARNS & FOSTER mark in its current form. Moreover, the mattress appears to never have had a "law tag" or "fire tag" attached to the mattress, i.e. there was no stitching marks in the fabric where a "law tag" or "fire tag" would have been attached prior to any removal. (Affidavit of Elise D. Bray, **Exhibit D**, ¶ 5.)

Because Tempur Sealy has extensive procedures to ensure that all of its mattresses include law tags and based on an inspection of the mattress by Tempur Sealy's Vice President of New Product Development, the mattress sold by Defendants is either a falsely marked reproduction (counterfeit), a reconstruction of an older mattress, or a compilation product formed from multiple deconstructed mattresses of unknown origin. (Affidavit of Allen Platek, **Exhibit E**, ¶ 7.)

60.    In any case, the STEARNS & FOSTER marked mattress purchased from Defendants is not a Tempur Sealy mattress and is potentially a consumer safety issue.

61.    In December 2023, Tempur Sealy directed Marksmen to supervise the purchase of a TEMPUR-LUXEADAPT Firm Mattress, Twin XL size 13-inch mattress advertised for sale on the Defendants' Mattress for Less storefront on Amazon. (Affidavit of Elise D. Bray, **Exhibit D**, ¶ 4; Certificate of Registration of TEMPUR-LUXEADAPT, **Exhibit A**, pg. 74.) The mattress was delivered on January 5, 2024 to the Marksmen investigator's location in Draper, Utah. The return address on the bill of lading that arrived with the mattress showed the Defendants' 86 Hempstead Turnpike, Hempstead, New York address. (Affidavit of Elise D. Bray, **Exhibit D**, ¶ 8.) On January 12, 2024, the Marksmen investigator provided Tempur Sealy with a detailed report including a number of photographs of the mattress purchased from the Mattress for Less Amazon store. (*Id.*, ¶ 9.)

62.    However, the mattress that arrived had been altered from its original composition. After researching the product using available tracking information, Tempur Sealy concluded that the "Twin" size mattress is actually one-half of a specific California Split King mattress. (*Id.*, ¶ 10.) That California Split King mattress was originally sold by Tempur Sealy in new condition, and then returned by the original consumer as part of a "comfort return,"[1] at

---

[1] A comfort return allows consumers to return a new mattress for refund during a set period of time after purchase.

which time it was picked up by Tempur Sealy and returned to a Tempur Sealy warehouse located in Hagerstown, Maryland, meaning that this mattress was not new but was "used." (*Id.*)

63.     Used mattresses returned to Tempur Sealy's Hagerstown, Maryland warehouse are deconstructed, the cover is removed from the mattress body, and the materials are recycled. Defendants somehow procured the returned mattress on its route to or after arrival at the Hagerstown, Maryland facility, interrupting the planned recycling of the mattress materials.

64.     Thereafter, upon information and belief, Defendants sold this Non-Authorized, used mattress as a new factory direct Tempur Sealy mattress.

## V.     DEFENDANTS ARE INTENTIONALLY INFRINGING TEMPUR SEALY'S MARKS.

65.     Defendants were aware of Tempur Sealy's intellectual property rights at least as early as November 2019, when Tempur Sealy's legal counsel provided Defendants with written notice of its intellectual property rights, its infringement of Tempur Sealy's trademarks, and the unfair practices that had come to Tempur Sealy's attention.

66.     In as early as November 2019, Tempur Sealy demanded that Defendants correct the violations and cease and desist from infringing Tempur Sealy's name, logo, and trademarks. Tempur Sealy communicated, in writing, on several occasions, its objections to Defendants' ongoing unauthorized use of the TEMPUR SEALY Marks, including the TEMPUR-PEDIC Mark, the TEMPUR Mark, the SEALY Mark, the STEARNS & FOSTER Mark, and the TEMPUR-PROADAPT Mark.

67.     Despite their actual notice of Tempur Sealy's trademark rights, Defendants continued or renewed their unlawful activity in the face of Tempur Sealy's objections up to and including the current time.

68.     Defendants' continued wrongdoing is wanton, willful, in bad faith, with complete knowledge and notice, and in utter disregard for Tempur Sealy's intellectual property and contractual rights, all for Defendants' financial gain.

69.     Because Defendant Michael Azzariti had personal knowledge of and directed, controlled, and/or supervised all of the actions set forth above he is also personally responsible for those actions under the Lanham Act's protections.

## VI.     DEFENDANTS' ACTIONS HAVE DAMAGED AND CONTINUE TO DAMAGE THE TEMPUR SEALY MARKS.

70.     As a result of Defendants' actions, the relevant public will be confused, mistaken, and deceived into wrongfully attributing approval and authorization of Defendants' goods, services, and business operations by Tempur Sealy. Moreover, Defendants' intentional interference with Tempur Sealy's contractual business relationships, customers, and prospective business opportunities threatens to damage and destroy the market for Tempur Sealy's products.

71.     As a result of Defendants' unlawful conduct, false representations, unfair practices, and other tortious conduct, Tempur Sealy has suffered substantial damages. Defendants' actions as described above have and will continue to irreparably injure Tempur Sealy's goodwill, business reputation, and valuable intellectual property, including its trademarks.

## CAUSES OF ACTION

### COUNT ONE
### (Federal Trademark Infringement in Violation of Section 32 of the Lanham Act)

72.     Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

73.    Defendants' unauthorized use, advertising, marketing, and sale of products using Tempur Sealy's registered marks, as alleged herein, is likely to deceive, mislead, and confuse the relevant public. Defendants' actions constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

74.    Defendants were or should have been, at all times, fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants with actual notice of its intellectual property rights and its infringement of Tempur Sealy's trademarks. Defendants' continued use of the TEMPUR SEALY Marks in violation of Tempur Sealy's rights is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR SEALY Marks in bad faith with actual knowledge of (1) the reputation and goodwill associated with the TEMPUR SEALY Marks and (2) Tempur Sealy's ownership of the TEMPUR SEALY Marks.

75.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

76.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business interests. Tempur Sealy has no adequate remedy at law for such infringement of Tempur Sealy's registered marks. Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## COUNT TWO
### (Federal Trademark Counterfeiting in Violation of Section 32 of the Lanham Act)

77.    Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

78.     Defendants' activities constitute the use in commerce of a reproduction, counterfeit, copy or colorable imitation of the TEMPUR SEALY Marks in connection with the sale, offering for sale, or advertising of Non-Authorized Products and/or counterfeit products, which causes or is likely to cause confusion, mistake, or to deceive, and such conduct amounts to federal counterfeiting under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

79.     Upon information and belief, Defendants have advertised and offered for sale their counterfeit goods using the TEMPUR SEALY Marks with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on Tempur Sealy's reputation and good will.

80.     Defendants' unauthorized use of the TEMPUR SEALY Marks in interstate commerce as described herein constitutes trademark counterfeiting under 15 U.S.C. § 1114(1).

81.     As a direct and proximate cause of Defendants' trademark counterfeiting, Tempur Sealy has suffered and will continue to suffer loss of income, profits and good will and Defendants have acquired and will continue to unfairly acquire income, profits and good will.

82.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business interests. Tempur Sealy has no adequate remedy at law for such infringement of Tempur Sealy's registered marks.  Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

83.     Tempur Sealy reserves its right to seek statutory damages under 15 U.S.C. § 1117(c) for Defendants' use of counterfeit marks at any time before final judgment is rendered in this case by the Court.

## COUNT THREE
### (Unfair Competition in Violation of Section 43 of the Lanham Act)

84.    Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

85.    The TEMPUR SEALY Marks and variants thereof, as used in connection with premium mattresses, pillows, and other comfort products, are distinctive marks that have become exclusively associated with Tempur Sealy through its continuous, extensive, and widespread use of such marks in advertising, promoting, and marketing its products and services over the past twenty years. As a result, the TEMPUR SEALY Marks exclusively identify Tempur Sealy's business, products, and services.

86.    By reason of Defendants' wrongful use of the TEMPUR SEALY Marks in connection with the sale of Non-Authorized Products and competing products, customers and prospective customers of Defendants' products are deceptively led to believe that Defendants' products are authorized Tempur Sealy Products covered by the Tempur Sealy warranty and that Defendants are affiliated, connected, associated, sponsored or otherwise approved by Tempur Sealy, when in fact Defendants have no connection or affiliation whatsoever with Tempur Sealy in regard to such products.

87.    Defendants' unauthorized use in commerce of the TEMPUR SEALY Marks, and false or misleading representations of fact concerning the products constitutes unfair competition/passing off, false designation of origin, and/or false or misleading descriptions or representations of fact, which is likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants with Tempur Sealy in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.     Defendants were at all times fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants with actual notice of its intellectual property rights. Defendants' continued violations after receiving such notice is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR SEALY Marks in bad faith with actual knowledge of (1) the reputation and goodwill in the TEMPUR SEALY Marks and (2) Tempur Sealy's ownership of these TEMPUR SEALY Marks.

89.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

90.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## COUNT FOUR
### (False Advertising in Violation of Section 43 of the Lanham Act)

91.     Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

92.     Defendants' use of false or misleading descriptions and representations of fact concerning the products sold under the TEMPUR SEALY Marks, including false or misleading actions and statements regarding the quality, performance and attributes of Tempur Sealy's products, misrepresents the nature, characteristics, and qualities of Defendant's goods, services, and commercial activities, and materially affects customers' purchasing decisions in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     Defendants were fully aware that their commercial statements were false. Tempur Sealy provided Defendants with actual notice of its intellectual property rights. Defendants' continued use of the TEMPUR SEALY Marks in violation of Tempur Sealy's rights is wanton and willful.

94.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

95.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## COUNT FIVE
### (Trademark Dilution in Violation of Section 43 of the Lanham Act)

96.     Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

97.     The TEMPUR SEALY Marks are arbitrary, fanciful, and/or highly distinctive and are famous, as used in connection with premium mattresses and other comfort products and are strong and famous marks as a result of Tempur Sealy's prominence in the marketplace and extensive advertising and sales of its goods and services under those marks.

98.     Defendants' unauthorized use in commerce of the TEMPUR SEALY Marks is likely to tarnish, dilute, and disparage Tempur Sealy's reputation, goodwill, and the TEMPUR SEALY Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

99.    Defendants' unauthorized use of the TEMPUR SEALY Marks commenced long after the marks became famous.

100.    Defendants were or should have been, at all times, fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants with actual notice of its intellectual property rights. Defendants' continued use of the TEMPUR SEALY Marks in violation of Tempur Sealy's rights is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR SEALY Marks in bad faith with actual knowledge of (1) the reputation and goodwill associated with these TEMPUR SEALY Marks and (2) Tempur Sealy's ownership of the TEMPUR SEALY Marks. Such use violates Tempur Sealy's ability to control the quality of its products and services.

101.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

102.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## COUNT SIX
### (Deceptive Trade Practices in Violation of N.Y. Gen. Bus. Law § 349)

103.    Tempur Sealy incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

104.    Defendants engaged in deceptive trade practices by causing a likelihood of confusion of or misunderstanding as to the source, sponsorship, approval, or certification of the

goods or services, or by causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, all in violation of N.Y. Gen. Bus. Law §349, which states as follows: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

105.    As a proximate result of the acts of Defendants alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

106.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Tempur Sealy seeks the following relief:

1.    That Defendants, their officers, agents, affiliates, servants, employees, and attorneys, those persons in active concert or participation with Defendants who receive actual notice of the court's order by personal service or otherwise, any other aliases or company names under which Defendants conducted or attempt to conduct business, and all persons, companies, and entities acting on behalf of Defendants be permanently enjoined from, directly or indirectly, continuing their actions in violation of the Lanham Act, including:

A.    using the TEMPUR SEALY Marks or any other trade name, trademark, trade dress, service mark, domain name, designation, symbol, or device containing the TEMPUR SEALY Marks, or any variant or any colorable imitations thereof

including the TEMPUR SEALY Marks that appear on both the exterior and interior of the Defendants' building in connection with their own word mark,

B.    promoting, offering for sale, or selling Non-Authorized Products or competing products using TEMPUR SEALY Marks through a retail store, or through any other means or channels of trade now or hereafter developed;

C.    making any false or misleading representation of fact concerning the source, nature, quality, or characteristics of their businesses, products or services, or warranty bearing, using, or advertised as sold by Defendants under or in connection with TEMPUR SEALY Marks, including but not limited to representing falsely that their products are covered by a Tempur Sealy warranty, or that they are an authorized retailer;

D.    making any false or misleading representation of fact concerning the source, nature, quality, or characteristics of Tempur Sealy Products;

E.    making any false or misleading representation of fact stating or suggesting that Defendants' products contain TEMPUR material;

F.    doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, sold, or offered for sale by Defendants;

G.    doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the status of Defendants' products as

authorized Tempur Sealy Products that come with all the benefit of Tempur Sealy's brand;

H.    doing any act or thing calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Tempur Sealy or that Defendants' products and/or services are being created, developed, manufactured, distributed, marketed, advertised, promoted, sponsored, offered for sale, or sold by Tempur Sealy or with Tempur Sealy's authorization, consent, approval, or permission; and

I.    attempting to purchase Tempur Sealy Products or engaging in business with Tempur Sealy, or any Tempur Sealy subsidiary, authorized retailer, or affiliated company, in their own names, in the name of any other company, alternate account, or alias, or through an agent or representative acting on their behalf;

2.    that Defendants, pursuant to 15 U.S.C. § 1118, shall be ordered to deliver up for destruction all mattresses, foundations, and other related products, labels, banners, signs, prints, wrappers, receptacles, articles, advertisements, and promotional materials in its possession or control bearing TEMPUR SEALY Marks, or any variants thereof or any name or mark confusingly similar thereto;

3.    that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Tempur Sealy within thirty days after entry of the injunction a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction;

4.     that Tempur Sealy recover its actual damages sustained as a result of Defendants'
       wrongful actions;

5.     that Defendants be required to account for and pay over to Tempur Sealy all gains,
       profits, and advantages realized as a result of Defendants' wrongful actions;

6.     that Tempur Sealy recover three times Defendants' profits made as a result of
       Defendants' wrongful actions, or three times Tempur Sealy's damages, whichever is
       greater;

7.     that as a result of Defendants' ongoing willful and egregious conduct this case be deemed
       an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendants be deemed
       jointly and severally liable for and be ordered to reimburse Tempur Sealy for its
       reasonable attorneys' fees;

8.     that Tempur Sealy recover its costs of court; and

9.     that Tempur Sealy recover such further relief to which it may be entitled.


Dated: May 3, 2024                          Respectfully submitted,

                                            s/*Brian D. O'Reilly*
                                            Brian O'Reilly
                                            N.Y. Bar No. 4139713
                                            O'REILLY IP PLLC
                                            26 Broadway, 8th Floor
                                            New York, NY 10004
                                            Telephone: 212-540-0650
                                            Brian@oreillyip.com

                                            Amy Sullivan Cahill
                                            *Admission forthcoming*
                                            VICE COX & TOWNSEND, PLLC
                                            2303 River Road, Suite 300
                                            Louisville, KY 40206
                                            Telephone: 502-290-3492
                                            acahill@vctfirm.com

                                            *Attorneys for Plaintiffs*