# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEMPUR SEALY INTERNATIONAL, INC., TEMPUR-PEDIC MANAGEMENT, INC., TEMPUR-PEDIC NORTH AMERICA, LLC, TEMPUR WORLD, LLC, DAN-FOAM APS, and SEALY TECHNOLOGY LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>    v.<br><br>MIKEY MATTRESS INC. d/b/a MATTRESS FOR LESS and MIKEY MATTRESS, and MICHAEL AZZARITI, Individually,<br><br>    Defendants/Counterclaim Plaintiffs. | Civil Action No. 2:24-cv-03312<br><br>**JURY DEMANDED** |

## ANSWER TO AMENDED ANSWER WITH COUNTERCLAIMS & JURY DEMAND

Plaintiffs/Counterclaim Defendants Tempur Sealy International, Inc., Tempur-Pedic Management, Inc., Tempur-Pedic North America, LLC, Tempur World, LLC, Dan-Foam APS, and Sealy Technology LLC ("Tempur Sealy," "Plaintiffs," or "Counterclaim Defendants"), by counsel, for their Answer to the Amended Answer with Counterclaims and Jury Demand by Defendants/Counterclaim Plaintiffs Mikey Mattress Inc. d/b/a Mattress For Less and Mikey Mattress, and Michael Azzariti, individually ("Mikey Mattress," "Defendants," or "Counterclaim Plaintiffs"), states as follows:

### COUNTERCLAIMS

1.    [Counterclaim Plaintiffs left out this Paragraph.]

2.    Counterclaim Plaintiffs bring Counterclaims for Monopolization, and Attempted Monopolization because Counterclaim Defendants (hereinafter "Counterclaim Defendants

1

Temper Sealy companies") have attempted to monopolize and have monopolized the relevant market of the mattress retail market to the antitrust injury of Counterclaim Plaintiffs, which have been lawfully selling, on Amazon, genuine, authentic new Tempur Sealy mattresses, and which Plaintiffs-Counterclaim Defendants (hereinafter "Counterclaim Defendants Temper Sealy companies") know and have known are genuine, authentic, new Tempur Sealey mattresses. *See Zino Davidoff SA v. CVS Copp.*, 571 F.3d 238, 243-244 (2d Cir. 2009) ("We recognize that, as a general rule, the Lanham Act does not impose liability for `the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner' because such a sale does not inherently case confusion or dilution. *Polymer Tech. Copp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992)." and in fact, Counterclaim Plaintiffs had been the Number 1 seller of Tempur Sealy mattresses on Amazon. Tempur Sealey companies, however, have acted to restrain trade and monopolize the sale of Tempur Sealy mattresses in the retail mattress business, including on Amazon, by, among other things, (i) imposing the requirement on Amazon of Counterclaim Plaintiffs providing a letter of permission by Counterclaim Defendants Tempur Sealy companies allowing Counterclaim Plaintiffs to sell Tempur Sealy mattresses' (ii) making false allegations to Amazon and others that Counterclaim Plaintiffs is selling counterfeit and/or used Tempur Sealy mattresses; (iii) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website; and (iv) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website.

**ANSWER NO. 2: Denied.**

## THE PARTIES

3. Counterclaim Plaintiffs are (i) Mikey Mattress Inc d/b/a Mattress For Less and d/b/a Mikey Mattress and (ii) Michael Azzariti. Mikey Mattress Inc. d/b/a Mattress For Less and

d/b/a named Mikey Mattress is a New York domestic corporation located in Nassau County, New York, which (a) has a place of business at 86 Hempstead Turnpike, West Hempstead, New York, (b) has a place of business at a location on NW Federal Highway, Jensen Beach. Florida, and (c) sells products over Mattress Inc. The Counterclaim Plaintiffs sell quality mattresses at retail.

**ANSWER NO. 3: Tempur Sealy is without knowledge or information sufficient to form a belief about the truth or falsity of this Paragraph, and therefore denies the same.**

4. Counterclaim Defendants are Tempur Sealy International, Inc., Tempur-Pedic Management, Inc., Tempur-Pedic North America LLC, Tempur World, LLC, Dan-Foam APS, and Sealy Technology LLC. The Counterclaim Defendants are, for the purposes of this Counterclaim and upon information and belief, are as described in paragraphs 2 through 7 of the Complaint.

**ANSWER NO. 4: Admitted.**

## JURISDICTION AND VENUE

5. The Counterclaims are for Monopolization and Attempted Monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER NO. 5: Tempur Sealy admits that Mikey Mattress is alleging counterclaims of Monopolization and Attempted Monopolization of Section 2 of the Sherman Act, 15 U.S.C. § 2, otherwise denies.**

6. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 4, 1114, 1114(1), 1125(a), and 1125(c) and 28 U.S.C. §§ 1331 1332 and 1367.

**ANSWER NO. 6: Admitted.**

7. Venue in the Eastern District of New York was chosen by the Counterclaim Defendants to pursue their claims.

**ANSWER NO. 7: Admitted.**

## FIRST COUNTERCLAIM
### (Monopolization in violation of Section 2 of the Sherman Act)

8. In or about June 2024, the Federal Trade Commission voted 5-0 to block the proposed acquisition of Mattress Firm, a Houston=based retailer by Counterclaim Defendant Tempur Sealy International, Inc. due to, among other things, perceived anticompetitive effects in the mattress retail market from that vertical acquisition.

https://www.furnituretoday.com/mattresses/ftc-votes-5-0-to-block-4b-tempur-sealy-mattress-firm-deal/ In response to the Federal Trade Commission, Counterclaim Defendant Tempur Sealy International, Inc. argued, unpersuasively to the Federal Trade Commission, that the Federal Trade Commission failed to understand the nuances of the mattress industry, including the sale of mattresses through Amazon. Counterclaim Defendant Tempur Sealy companies cited a number of mattress retailers but as for horizontal competitors, identified only Serta Simmons.

**ANSWER NO. 8: Tempur Sealy admits that the Federal Trade Commission voted to block the proposed acquisition of Mattress Firm, otherwise denies.**

9. On July 2, 2024, the Federal Trade Commission filed an action in the U.S. District Court for the Southern District of Texas seeking a Court Order blocking the proposed acquisition of Mattress Firm by Counterclaim Defendant Tempur Sealy companies. According to a Reuters report, a document submitted to the Federal Trade Commission showed that the CEO of Counterclaim Defendant Temper Sealy companies have plans to eliminating competition and competitors, which includes Counterclaim Plaintiffs.

https://www.reuters.com/markets/deals/tempur-sealys-deal-buy-mattress-firm-aims-eliminate-

competition-document-shows-2024-08-16/ At the same time, Counterclaim Defendants Temper Sealy companies, in attempting to avoid monopolization, argued to the Feral Trade Commission that they allow third-party companies to sell on Amazon, but the argument was false, as Counterclaim Defendant Temper Sealy companies are suing Counterclaim Plaintiffs.

**ANSWER NO. 9: Tempur Sealy admits that the Federal Trade Commission filed an action in the U.S. District Court for the Southern District of Texas, otherwise denies.**

10. Counterclaim Plaintiffs, in selling authentic Tempur Sealy products (not counterfeit knock-offs), have not been in violation of trademark law according to the principles stated by the Second Circuit and the Eastern District of New York. Counterclaim Defendants have been advised of these precedents by counsel for Counterclaim Plaintiffs. All mattresses have a legal tag, arrive in sealed original boxes with the Tempurpedic's stamp on the inside foam and Stearns and Foster original signatures both can only be done by the manufacturer and at the time of manufacturing. Counterclaim Plaintiffs take photos of the mattresses with proper measurements; all are inspected upon delivery to ensure customer satisfaction. Through their monopolized tactics, Tempur Sealy mattresses are price locked throughout the country, we make them affordable by selling them for less without the manufacturer's warranty and offering our own in-house warranty through a third-party company that goes over and beyond the manufacturer's warranty.

**ANSWER NO. 10: Denied.**

11. Counterclaim Plaintiffs are a multiple award-winning company for their New York and Florida store fronts, winning best mattress company for Long Island for multiple years and winning best mattress company for the Treasure Coast, after only being in business for a year, Counterclaim Plaintiffs have 5 stars worldwide on Google, Yelp, Facebook, Amazon

reviews, a perfect score with the Better Business Bureau and have been inducted into the Who's Who with a stellar reputation. These ratings would not be possible unless Counterclaim Plaintiffs were selling genuine, authentic, new Temper Sealy mattresses

**ANSWER NO. 11: Tempur Sealy is without knowledge or information sufficient to form a belief about the truth or falsity of this Paragraph, and therefore denies the same.**

12. In *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243-244 (2d Cir. 2009), the U.S. Court of Appeals for the Second Circuit stated: "We recognize that, as a general rule, the Lanham Act does not impose liability for `the sale of ,genuine goods bearing a true mark even though the sale is riot authorized by the mark owner' because such a sale does not inherently case confusion or dilution. *Polymer Tech. Copp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992)." The Second Circuit in *Zino Davidoff SA v. CVS Corp.* quoted from the following passage in *Polymer Tech. Corp. v. Mimran*:

> As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. *NEC Electronics v. Cal Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir.), *cent. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). Thus, a distributor who resells trademarked goods without change is not liable for trademark infringement. See 2 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 25:11 (2d ed. 1984) (citing *Prestonettes, Inc. v. Coty*, 264 U. S. 359, 44 S .Ct. 350, 68 L. Ed. 731 (1924) and *Champion Spark Plug Co. v. Sanders*, 331 U. S. 125, 67 S.Ct. 113 6, 91 L. Ed. 13 86 (1947)). In addition, even repackaging of goods is not trademark infringement if it does not deceive the public or damage the mark owner's goodwill. *See Prestonettes*, 264 U.S. at 368, 44 S.Ct. at 351 (sale of repackaged cosmetics permitted provided statement disclosing origin is enclosed); *Champion*, 331 U.S. at 130, 67 S.Ct. at 113 9 (sale of reconditioned spark plugs under original name permitted provided full disclosure made).
>
> *Polymer Tech. Corp. v. Mimran*, 975 F.2d at 61-62.

**ANSWER NO. 12: This is a legal argument, and therefore, Tempur Sealy denies.**

13. The Second Circuit in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102-03 (2d Cir. 2010), upheld the lawfulness of the unauthorized sales on eBay of Tiffany trademarked products:

> We have recognized that a defendant may lawfully use a plaintiff s trademark where doing so is necessary to describe the plaintiff s product and does not imply a false affiliation or endorsement by the plaintiff of the defendant. "While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product." *Dow Jones & Co. v. Intl Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir.2006); see also *Polymer Tech. Copp. v. Mimran*, 975 F.2d S 8, 61-62 (2d Cir.1992) ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner" (footnote omitted)); cf. *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924) (when a "mark is used in a way that does not deceive the public," there is "no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."). We agree with the district court that eBay's use of Tiffany's mark on its website and in sponsored links was lawful. eBay used the mark to describe accurately the genuine Tiffany goods offered for sale on its website. And none of eBay's uses of the mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website... .
>
> We conclude that eBay's use of Tiffany's mark in the described manner did not constitute direct trademark infringement. . . .

**ANSWER NO. 13: This is a legal argument, and therefore, Tempur Sealy denies.**

14. Similarly, in *Krasnyi Oktyarbr, Inc. v. Trilini Imposts ("Trilini II")*, 578 F. Supp.2d 455, 467-468 (E.D.N.Y. 2008) (Trager, J.), the Court stated:

> "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. Thus, a distributor who resells trademark goods without change is not liable for trademark infringement." *Polymer Tech. Copp. v. Mimran*, 975 F.2d 5 8, 61 (2d Cir.1992) (citations omitted). "The unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement, since there is no possibility of deception or confusion." *H.L. Hayden Co. of NY, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1023 (2d Cir.1989) (citations omitted). This principle has come to be known as the exhaustion or first-sale doctrine. See *Italverde T~adzng, Inc. v. Four Bills of Lading Numbered LRNNN*, 485 F. Supp.2d

7

187, 210 (E.D.N.Y.2007); *Ryan v. Volpone Stamp Co.*, 107 F. Supp.2d 369, 3 82 (S.D.N.Y.2000) (proposing a two-part test for meeting the first-sale doctrine, considering first whether the trademark owner authorized the first sale and then whether "the goods which were later sold without authorization were genuine"); see also Thomas McCarthy; *Trademarks and Unfair Competition*, § 25:41 (4th ed.2008). Thus, defendants' first-sale doctrine defense rests on the same inquiry of whether or not the goods were genuine.

The parties do not dispute that the goads are "genuine. ". . . .

**ANSWER NO. 14: This is a legal argument, and therefore, Tempur Sealy denies.**

15. To sell as a third-party seller on Amazon, Amazon must verify and approve the business and the credibility of the business. The application process is lengthy and time consuming to qualify as a seller. Counterclaim Plaintiffs have been selling on Amazon, following its rules and regulations, for several years as Amazon's preferred top seller. Since Counterclaim Defendants' accusations and this lawsuit, Counterclaim Plaintiffs are no longer their top or preferred seller, nor have sold or profited in months.

**ANSWER NO. 15: Tempur Sealy is without knowledge or information sufficient to form a belief about the truth or falsity of this Paragraph, and therefore denies the same.**

16. Selling as a third-party seller on Amazon allows one to ship merchandise two ways. One can ship merchandise by oneself ("MF," merchant fulfilled), or one can ship directly through Amazon ("FBA," fulfilled by Amazon). Counterclaim Plaintiffs shipped mattresses FBA for some time and shipped their mattresses to Amazon's warehouse, where those mattresses were inspected for authenticity. Counterclaim Plaintiffs never had one complaint as they were 100% perfect and authentic. Amazon is fully aware that my merchandise is lawful and genuine as they had a large amount of Counterclaim Plaintiffs' inventory with zero complaints. Had Counterclaim Plaintiffs not been selling genuine, authentic new Tempur Sealy mattresses, Counterclaim Plaintiffs could have never been a seller on Amazon given Amazon's strict

policies. In fact, Counterclaim Plaintiffs received zero complaints on Amazon, including zero complaints about authenticity. Also, Counterclaim Plaintiffs have used Amazon photographs as Amazon's preferred seller, and Counterclaim Plaintiffs provide a legal disclaimer that the mattresses are sols without the manufacturer's warranty.

**ANSWER NO. 16: Tempur Sealy is without knowledge or information sufficient to form a belief about the truth or falsity of this Paragraph, and therefore denies the same.**

17. Counterclaim Defendants Temper Sealy companies know that the Temper Sealy mattresses sold by Counterclaim Plaintiffs are new and authentic. Amy Cahill, counsel for Temper Sealy companies acknowledged in correspondence that that the Temper Sealy mattresses sold by Counterclaim Plaintiffs are authentic but questioned whether they were new. According to the website of Counterclaim Defendants Temper Sealy companies, the policy and practice of the Counterclaim Defendants Temper Sealy companies, however, is to destroy all "used" mattresses, such that Counterclaim Plaintiff would not be able to acquire and sell "used" mattresses. https://help.stearnsandfoster.com/hc/en-us/articles/4418601293591-Do-you-sell-damaged-returned-or-refurbished-products;

**ANSWER NO. 17: Denied.**

18. In May 2017, Counterclaim Plaintiff became a seller on Amazon with no issues or concerns until February 13, 2024 when Counterclaim Plaintiff were falsely accused of not selling genuine, authentic Temper Sealy mattresses. Despite the lawfulness of Counterclaim Plaintiffs' sale of genuine, authentic Tempur Sealy mattresses through Amazon, Counterclaim Plaintiffs have been informed that without a letter of authorization from Counterclaim Defendant Tempur Sealy companies, Counterclaim Plaintiffs will not be permitted to sell what are genuine,

authentic Tempur Sealy mattresses through Amazon. Counterclaim Defendants are exercising their market power to exclude Counterclaim Plaintiffs from the mattress retail market.

**ANSWER NO. 18: Tempur Sealy is without knowledge or information sufficient to form a belief about the truth or falsity of this Paragraph, and therefore denies the same.**

19. Through emails, presentations, and other deal documents, Counterclaim Defendants Temper Sealy companies have made it abundantly clear that its acquisition of Mattress Firm is intended to kneecap competitors and dominate the market," said Henry Liu, Director of the FTC's Bureau of Competition. "This deal isn't about creating efficiencies; it's about crippling the competition, which would raise prices on an essential good ad could lead to layoffs for good paying American manufacturing jobs in nearly a dozen states.

**ANSWER NO. 19: Denied.**

20. Monopolization is illegal monopoly behavior. Some categories of prohibited behavior include exclusive dealing, price discrimination, refusing to supply an essential facility, product tying and predatory pricing. The law seeks to guard against the use of monopoly power to unfairly block competition, fix prices, gain a competitive advantage, or destroy a competitor.

**ANSWER NO. 20: This is a legal argument, and therefore, Tempur Sealy denies.**

21. The offense of monopolization under Section 2 of the Sherman Antitrust Act has two elements: *first, that the defendant possesses monopoly power in a defined market – here, the mattress retail market; and second, that the defendant has obtained or maintained that power through unlawfully exclusionary conduct* -- here, the requirement that Amazon not allow sales of what are genuine, authentic Tempur Sealy mattresses by retailers such as Counterclaim Plaintiffs to sell through Amazon without approval by Counterclaim Defendants Tempur Sealy companies.

**ANSWER NO. 21: This is a legal argument, and therefore, Tempur Sealy denies.**

22. For Sherman Act purposes, a "relevant market" is a market in which a particular product or service is sold; it is the intersection of a relevant product market and a relevant geographic market. The theory of "relevant market" is used in order to identify the products and services which are directly competing in a business. In other words, the relevant market is the market in which the competition takes place. The enforcement of the provisions of antitrust law would be not possible without referring to the market where competition takes place. The "relevant market" is a key concept in antitrust analysis, defining the scope of competition that is considered when evaluating the potential anti-competitive effects of a business practice, merger ora company's dominance. The definition of the "relevant market" encompasses the products or services that are reasonable substitutes for one another from the consumer's perspective, In determining the relevant product market, the analysis assesses those products that are reasonably interchangeable. Similarly, a relevant geographic market requires a determination of the area in which there is "effective competition" for the relevant product.

**ANSWER NO. 22: This is a legal argument, and therefore, Tempur Sealy denies.**

23. The "relevant market" here with respect to product is the retail mattress business (which is what the Federal Trade Commission treated it to be): mattresses are interchangeable for market definition purposes. The "relevant market" here with respect to "geography" is with respect to retail mattress sales on Amazon.

**ANSWER NO. 23: Admitted that the relevant market is the retail mattress business and that mattresses are interchangeable for market definition purposes, otherwise denied.**

24. Counterclaim Defendants Tempur Sealy companies have monopoly power in the relevant market, as evidenced by, among other things, (i) imposing the requirement on Amazon of Counterclaim Plaintiffs providing a letter of permission by Counterclaim Defendants Tempur

Sealy companies allowing Counterclaim Plaintiffs to sell Tempur Sealy mattresses' (ii) making false allegations to Amazon and others that Counterclaim Plaintiffs is selling counterfeit and/or used Tempur Sealy mattresses; (iii) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website; and (iv) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website.

https://crosnerlegal.com/cl-files-fictitious-pricing-class-action-against-tempur-pedic/

**ANSWER NO. 24: Denied.**

25. Counterclaim Defendants Tempur Sealy companies have maintained that power through unlawfully exclusionary conduct -- here, (i) imposing the requirement on Amazon of Counterclaim Plaintiffs providing a letter of permission by Counterclaim Defendants Tempur Sealy companies allowing Counterclaim Plaintiffs to sell Tempur Sealy mattresses' (ii) making false allegations to Amazon and others that Counterclaim Plaintiffs is selling counterfeit and/or used Tempur Sealy mattresses; (iii) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website; and (iv) engaging in unlawful and deceptive business practices by advertising fictitious sales prices on their website.

**ANSWER NO. 25: Denied.**

26. Counterclaim Plaintiffs have suffered injury in fact in the form of lost sales and lost goodwill as a result of Counterclaim Defendants' monopolizing conduct that has cut off Counterclaim Plaintiffs from being able to sell genuine, authentic Tempur Sealy mattresses on Amazon. Counterclaim Plaintiffs have standing to seek redress for those injuries.

**ANSWER NO. 26: Denied.**

## SECOND COUNTERCLAIM
### (Attempted Monopolization in violation of Section 2 of the Sherman Act)

27. The allegations of paragraphs 1 through 26 of the Counterclaims are incorporated herein by reference as if repeated in full.

**ANSWER NO. 27: Tempur Seal repeats and incorporates its answers to Paragraphs 1 – 26 herein by reference as if repeated in full.**

28. The offense of attempted monopolization under Section 2 of the Sherman Antitrust Act requires: (i) *anticompetitive conduct* (here, the requirement that Amazon not allow sales of what are genuine, authentic Tempur Sealy mattresses by retailers such as Counterclaim Plaintiffs to sell through Amazon without approval by Counterclaim Defendant Tempur Sealy International, Inc..) (ii) *a specific intent to monopolize* (here, shown by the exchange of correspondence by counsel); and (iii) *a dangerous probability of achieving monopoly power* (here, shown by the willingness of Amazon to cut off the Number 1 seller of Tempur Sealy mattresses in Counterclaim Plaintiffs on Amazon),. The same principles are applied in evaluating both attempt and monopolization claims.

**ANSWER NO. 28: This is a legal argument, and therefore, Tempur Sealy denies.**

29. Counterclaim Plaintiffs have suffered antitrust injury in fact in the form of lost sales and lost goodwill as a result of Counterclaim Defendants' attempted monopolization that has cut off Counterclaim Plaintiffs from being able to sell genuine, authentic, new Tempur Sealy mattresses on Amazon. Counterclaim Plaintiffs have standing to seek redress for those injuries.

**ANSWER NO. 29: Denied.**

## RESPONSE TO PRAYER FOR RELIEF

Tempur Sealy denies that Mikey Mattress is entitled to any relief in this case and prays that the Court deny all relief sought by Mikey Mattress.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Tempur Sealy hereby demands a trial by jury on all issues so triable.

Dated: May 21, 2025　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　BY: /s/ Brian D. O'Reilly
　　　　　　　　　　　　　　　　　　　　　　Brian D. O'Reilly
　　　　　　　　　　　　　　　　　　　　　　N.Y. Bar No. 4139713
　　　　　　　　　　　　　　　　　　　　　　O'REILLY IP PLLC
　　　　　　　　　　　　　　　　　　　　　　26 Broadway, Floor 8
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10004
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 540-0650
　　　　　　　　　　　　　　　　　　　　　　Brian@oreillyip.com

　　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of Plaintiffs' Answer to Defendants' Amended Answer with Counterclaims and Jury Demand was served via ECF on this 21st day of May, 2025, upon Defendants' attorneys:

Jillian L. McNeil
Steven R. Schlesinger
JASPAN, SCHLESINGER, & HOFFMAN, LLP
300 Garden City Plaza, 5th Floor
Garden City, NY 11530
Telephone: (516) 746-8000
Fax: (516) 393-8282
jmcneil@jaspanllp.com
sschlesinger@jaspanllp.com

By: /s/ Brian D. O'Reilly

Brian D. O'Reilly
N.Y. Bar No. 4139713
O'REILLY IP PLLC
26 Broadway, Floor 8
New York, NY 10004
Telephone: (212) 540-0650
Brian@oreillyip.com

*Attorney for Plaintiffs*